IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-00500-F

| | | |
|---|---|---|
| DELMONT PROMOTIONS, LLC, a North Carolina limited liability company, and SEEKIN' ENTERTAINMENT LLC d/b/a B-ROSE PRODUCTIONS, a North Carolina limited liability company, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **ORDER** |
| v. | ) ) | |
| ALGERNOD LANIER WASHINGTON, a/k/a PLIES, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the court on the Plaintiffs' Motion for Default Judgment [DE-25]. For the reasons stated herein, the motion is ALLOWED.

**I. PROCEDURAL HISTORY**

The plaintiffs originally filed this breach of contract action on July 13, 2010. *See* Complaint [DE-1] (*Delmont Promotions, LLC, v. Maury & NI, Inc.*, No. 5:10-CV-279-F, hereinafter the "Original Action").[1] However, after a notice of voluntary dismissal, the court dismissed the case without prejudice under Federal Rule of Civil Procedure 41(b). *See* Order of August 10, 2012 [DE-40] (Original Action). The plaintiffs filed this action for a second time on July 9, 2013.

---

[1] With the exception of those docket entry citations including an "Original Action" parenthetical, all docket entries will refer to the present case.

On August 9, 2013, the plaintiffs filed an Affidavit of Service [DE-10] attesting service of the defendant via certified mail. According to the affidavit, the certified mail—addressed to Defendant Algernod Washington—was signed for by Kim Nickols on August 3, 2013. *Id.* at 1. The plaintiffs subsequently moved for entry of default, which was entered June 11, 2013. *See* Order of November 6, 2013 [DE-16].[2] The plaintiffs filed the present motion on September 25, 2014. However, due to an unanticipated change in counsel, the action was stayed on May 12, 2015. *See* Order of January 6, 2015 [DE-30]. The plaintiffs have acquired new counsel and the action is now ready to continue forward. Washington has failed to plead, appear, or otherwise defend this action.

## II.  FINDINGS OF FACT

Upon default, the well-pleaded facts of the complaint are deemed admitted. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Based upon the plaintiffs' Complaint and the hearing held on July 27, 2015, the court finds the following facts:

Defendant Algernod Washington is a popular musician who performs under the moniker "Plies." *See* Complaint [DE-1] at 1-2. Washington has released at least three albums and has been "filling venues" with his performances. *See id.* The plaintiffs are event organizers and promoters. *See id.* at 2.

On August 6, 2008, the parties executed an "Artist Engagement Agreement," in which Washington agreed to perform at the RBC Center in Raleigh, North Carolina, on September 14, 2008. *See id.* ¶ 7. However the parties later agreed to change the date of the show to November 8, 2008. *See id.* ¶¶ 8-10. As a result, the parties entered into a "Revised Artist Engagement

---

[2] The plaintiffs had previously moved for default judgment, *see* Motion for Default Judgment [DE-17], but had failed in their briefings to establish that service was proper under the Federal Rules of Civil Procedure and that this court had personal jurisdiction over the defendant. *See* Order of July 16, 2014 [DE-21] (denying Motion for Default Judgment).

2

Agreement," in which Washington agreed to perform on the new date and the Plaintiffs agreed to pay Washington an additional $5,000.00. *See id.* ¶ 11.

Washington ultimately cancelled the concert, citing a scheduling conflict. *Id.* ¶ 12. The Complaint alleges that, at the time Washington informed the plaintiffs that he would not perform, the plaintiffs had already expended approximately $256,867.75 promoting and preparing for the show. *Id.* ¶ 14. According to testimony at the July 27, 2015 hearing, the plaintiffs also spent an additional $50,841.00 in cash that was wired directly to performers for the concert. Thus, the plaintiffs' total out-of-pocket expenses were $315,365.75. The plaintiffs introduced receipts totaling this amount at the July 27, 2015 hearing.

On November 8, 2008, the date on which he was supposed to perform at the RBC Center, Washington performed in Tampa, Florida, to a sold out show at a venue holding approximately 25,000 people. *Id.* ¶ 18. One month prior to cancelling the RBC Center concert, Washington performed an unrelated show at Greensboro Coliseum, in Greensboro, North Carolina. *See id.* ¶ 16.[3]

The RBC Center in Raleigh has a 20,000 seat capacity and tickets had an average price of fifty dollars. *Id.* ¶ 19. The plaintiffs therefore anticipated gross ticket sales of $1,000,000.00. *See id.* Prior to Washington's cancellation, TicketMaster had amassed approximately $30,000 in ticket sales. *Id.* ¶ 20. According to testimony at the July 27, 2015 hearing, as well as a TicketMaster audit report issued prior to Washington's cancellation, TicketMaster had listed $188,780.00 in ticket value for the concert, which included those tickets that had already been sold and those that were on hold.

---

[3] The court takes note of this concert because of its impact on the "minimum contacts" test discussed below.

3

## III. DISCUSSION

### A. Personal Jurisdiction and Service of Process

The plaintiffs originally took a voluntary dismissal in this case after difficulties with serving process on the defendant. *See* Order of March 1, 2012 [DE-32] (Original Action) (denying a Motion for Default Judgment because of faulty service of process). The plaintiffs have returned, claiming that the defendant has now been properly served. In evaluating the present motion, the court must look to whether the court has personal jurisdiction over the defendant and to whether the defendant was properly served with process.

#### i. Personal Jurisdiction

For district courts to exercise personal jurisdiction over a defendant pursuant to a state's long-arm statute, two requirements must be met: (1) "the forum state's long-arm statute must authorize the exercise of such personal jurisdiction," and (2) "if that authorization exists, the Due Process Clause of the Fourteenth Amendment requires that the defendant have sufficient minimum contacts with the forum state." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Under North Carolina's long-arm statute, North Carolina courts have jurisdiction over "any action which . . . [a]rises out of a promise, made anywhere to the plaintiff . . . by the defendant to perform services within [North Carolina]." *See* N.C. Gen. Stat. § 1-75.4(5)(a). The facts show that the defendant promised the plaintiffs that he would perform a concert in North Carolina, and he is therefore subject to jurisdiction based on North Carolina's long-arm statute, provided that he also has sufficient minimum contacts with North Carolina.

The "minimum contacts" test does not follow a definite calculus. "Indeed, a single act by a defendant can be sufficient to satisfy the necessary 'quality and nature' of such minimal

4

contacts, although 'casual' or 'isolated' contacts are insufficient to trigger such an obligation." *CFA Inst.*, 551 F.3d at 293. The defendant performed a show in Greensboro, North Carolina, less than a month before he was supposed to perform at the RBC Center in Raleigh, North Carolina. *See* Complaint [DE-1] ¶ 16. The court is satisfied that the concert in Greensboro, though a single act, was significant and sufficient to satisfy the "minimum contacts" test. Therefore, this court has proper personal jurisdiction over the defendant.

### ii. Service of Process

Under Rule 4 of the North Carolina Rules of Civil Procedure, service of process may be effected by "mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. R. Civ. P. 4(j)(1)(c). Rule 4 further requires that, before default judgment may be entered where service has been effected by registered or certified mail, the serving party must file an affidavit averring (1) "[t]hat a copy of the summons and complaint was deposited in the post office for mailing by registered or certified mail, return receipt requested;" (2) "[t]hat it was in fact received as evidenced by the attached registry receipt or other evidence satisfactory to the court of delivery to the addressee;" and (3) "[t]hat the genuine receipt or other evidence of delivery is attached." N.C. Gen. Stat. § 1-75.10(a)(4); *see also* N.C. R. Civ. P. 4(j2)(2).

Here, the plaintiffs filed an Affidavit of Service [DE-10] wherein their counsel averred (1) that he sent a copy of the summons and complaint, along with other litigation-related documents, to the defendant via certified mail with return receipt requested; (2) that those documents were received and signed for by Kim Nickols at the intended address; and (3) that a receipt of delivery was attached to the affidavit. *Id.* at 1. The receipt was in fact attached. *Id.* at 2.

5

Case 5:13-cv-00500-F   Document 41   Filed 08/03/15   Page 5 of 7

While the receipt was signed for by Kim Nickols and not the defendant, Rule 4 does not require that the addressee himself sign the return receipt. *See, e.g., Adams v. Haynes*, No. 5:10-CT-3052, 2012 WL 2367436, at *4 (E.D.N.C. June 21, 2012) (finding a rebuttable presumption of valid service even where the addressee himself had not signed); *Osman v. Reese*, 203 N.C. App. 373, 692 S.E.2d 488, at *3 (2010) (finding the same). Given the foregoing, service was properly effected and the reasons for both the plaintiffs' previous dismissal and the court's previous denial of default judgment have been resolved.

## B. Default Judgment

The court turns now to the issue of default judgment. The court finds that it has subject matter jurisdiction over this matter, and that service on the defendant was obtained in accordance with Rule 4 of the Federal Rules of Civil Procedure. Accordingly, this court has personal jurisdiction over the defendant. The Clerk of Court filed entry of default on November 6, 2013, as to Defendant Algernod Lanier Washington. Given the foregoing, the court concludes that the procedural requirements for entry of default judgment have been met. *See* Fed. R. Civ. P. 55(b).

### i. Relief

Having accepted the well-pleaded allegations of fact in the Complaint as true, the court must still determine whether those allegations support the relief sought. *See Ryan*, 253 F.3d at 780. In doing so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P 55(b)(2). The court elected to hold such a hearing on July 27, 2015, at which the plaintiffs presented evidence of both out-of-pocket expenses and lost profits. That evidence included receipts, testimony, and audit reports from Ticketmaster concerning how many tickets had already been sold and how many were being held at the time the concert was cancelled. The plaintiffs provided sufficient evidence of lost out-of-pocket expenses totaling $315,365.75, and lost profits based on the

Ticketmaster audit totaling $188.780.00. Therefore, the plaintiffs are entitled to recover a total of $504,145.75.

The court finds that any evidence of lost profits beyond the Ticketmaster audit would be speculative and not capable of being proven with reasonable certainty. *See Yarmouth Sea Prods. Ltd. v. Scully*, 131 F.3d 389, 395 (4th Cir. 1997). Therefore, the court denies any claim by the plaintiffs for lost profits beyond the tickets that were already sold and on hold when Washington cancelled the RBC Center concert.

## IV. CONCLUSION

It is hereby ORDERED, ADJUDGED, AND DECREED that:

1. The Plaintiffs have and recover of Defendant Algernod Lanier Washington the amount of $504,145.75, plus interest at the legal rate per annum from the date of entry of this judgment until paid.

The Plaintiffs' Motion for Default Judgment [DE-25] is ALLOWED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED. This, the 3 day of August, 2015.

*James C. Fox*

JAMES C. FOX
Senior United States District Judge